**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CRAIG REULBACH, on behalf of himself and all others similarly situated, | ) CASE NO. 21-cv-01013 |
| | ) |
| | ) JUDGE PATRICIA A. GAUGHAN |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) |
| | ) |
| LIFE TIME FITNESS, INC., *et al.,* | ) |
| | ) |
| *Defendants.* | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO COMPEL ARBITRATION, TO STAY PROCEEDINGS AND FOR**
**ATTORNEYS' FEES**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, Defendants LTF Club Operations Company Inc., d/b/a Life Time Fitness, Inc., and LTF Club Management Company LLC (collectively "Life Time") respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration, to Stay Proceedings and for attorneys' fees. Plaintiff Craig Reulbach ("Reulbach") agreed to arbitrate this dispute on an individual basis before the American Arbitration Association ("AAA"). The FAA requires that Reulbach be ordered to proceed with individual arbitration pursuant to his agreement and that these proceedings be stayed pending the outcome of that arbitration. 9 U.S.C. §§ 3, 4.

I.  **FACTS**

A.  **The Parties and Reulbach's Claims.**

Life Time operates a chain of fitness facilities, including six locations in Ohio. *See* Declaration of Kelley Fredricks, May 14, 2021 ("Fredricks Decl."), ¶ 3. Reulbach worked as a personal trainer and fitness instructor at Life Time's Beachwood, Ohio facility from approximately March 10, 2010 to March 8, 2021. Fredricks Decl., ¶ 4. Life Time refers to its employees as "team

members." *Id*. In his Complaint, Reulbach alleges that he was paid "an hourly wage" and was not paid for various categories of alleged off-the-clock work. Dkt. 1 at Ex. A, ¶ 24. He has asserted collective and class claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., and the Ohio Minimum Fair Wage Standards Act, R.C. 4111.02, et. seq., as well as for unjust enrichment, and individual discrimination claims under Ohio law. *Id.* Reulbach seeks to recover allegedly unpaid overtime compensation, liquidated damages, attorneys' fees and other damages for the alleged discrimination. *Id*. With respect to his wage and hour claims, Plaintiff purports to represent a putative nationwide FLSA collective and an Ohio statewide class of similarly situated present and former Life Time "fitness instructors." *Id*.

### B.    The Parties' Agreement to Arbitrate These Claims.

In June 2019, Life Time introduced a new Team Member Care ("TMC") Program and Mutual Arbitration Agreement to its Ohio facilities and team members. Fredricks Decl., ¶ 5, Ex. 1. The first page of the Mutual Arbitration Agreement contains the heart of the agreement and provides as follows:

> Mutual Agreement to Arbitrate; Claims Covered by the Agreement.
> Any "Covered Claims" that arise between team members and Life
> Time and its parents, subsidiaries, affiliates, their current or former
> officers, directors, employees, agents, and/or their successors and
> assigns (collectively also referred to as "**Life Time**"), will be
> submitted to and determined exclusively by binding arbitration in
> accordance with the Federal Arbitration Act. "**Covered Claims**" are
> those brought under any statute, regulation, law, local ordinance,
> contract, covenant (express or implied), or common law relating to
> employment with Life Time, including but not limited to those
> concerning employee benefit plans, compensation, discrimination,
> harassment, retaliation, recovery of bonus, tuition reimbursement or
> relocation benefits, leave of absence, disability or other
> accommodation, or termination of employment.
>
> **Except as expressly provided in this Agreement, arbitration is
> the only forum for resolving Covered Claims, and that Life
> Time and its team members waive the right to a trial before a
> judge or jury in federal or state court for Covered Claims.** The

> Arbitrator will have the authority to award the same damages and other relief that would have been available in court under applicable law.

Ex. 1 at ¶ 8 (emphasis in original).

The Mutual Arbitration Agreement also contains a class-action waiver that states:

> Waiver of Class, Collective, Consolidated, or other Representative Claims. Covered Claims will be arbitrated only on an individual basis, and Life Time's team members waive the right to participate in or receive monetary or other relief from a class, collective, consolidated, or other representative proceeding. Neither Life Time nor its team members may bring a claim on behalf of other individual(s). An Arbitrator hearing a claim may not combine more than one individual's claim or claims into a single case or arbitrate any form of a class, collective, consolidated, or other representative proceeding.

Ex. 1 at ¶ 9.

In addition, the Mutual Arbitration Agreement contains the following provision enabling team members who would prefer not to participate to opt out of the arbitration program:

> Option to Opt-Out of Arbitration. Arbitration is not a mandatory condition of employment at Life Time, except for team members working at Life Time clubs in Missouri. Except for team members in Missouri, any Life Time team member may elect not to receive the benefits of arbitration by notifying Life Time in writing of the team member's desire to opt out of this arbitration provision by sending a letter, by certified mail, to the following address, within 15 days after the team member receives this Agreement, stating the team member's name and intent to opt out of this arbitration provision:
>
> Life Time Arbitration Coordinator
> Life Time, Inc.
> 2902 Corporate Place
> Chanhassen, MN 55317
>
> Life Time team members will not be subject to retaliation if they exercise their right to opt out of this arbitration provision. If a team member does not opt out of this arbitration provision within the 15-day period, that team member and Life Time shall be bound by the terms of this arbitration provision.

4831-3121-6361

Ex. 1 at ¶ 10.

The TMC Program and Mutual Arbitration Agreement also contained an extensive, four-page Frequently Asked Questions (FAQs) section. *See* Ex. 1 at ¶ 11. Some of the FAQs and answers were as follows:

**Do I give up any rights by agreeing to binding arbitration?** Yes, arbitration governs the place or venue in which claims are heard. Under the agreement, you give up the right to have your dispute heard by a judge or jury in the court system. You also give up your right to bring or participate in a class or collective claim. However, you will be able to bring whatever individual legal claims you believe you have in arbitration.

You do not give up the right to make a complaint to the federal Equal Employment Opportunity Commission (EEOC), Department of Labor, and National Labor Relations Board (NLRB), or any federal administrative agency, or any other claim that the law does not allow to proceed in arbitration. There are also other kinds of claims that are not covered by arbitration (including claims for Workers' Compensation, State disability insurance, and Unemployment compensation benefits), which are detailed in the agreement.

**May I review the Mutual Arbitration Agreement?** Yes, the Mutual Arbitration Agreement has been uploaded to your Workday account, and posted to LT Grid and LT Pulse. Additionally, copies of the agreement and these FAQs are being mailed to the current home address you have on file with the Company.

**Should I consult with an attorney about the Mutual Arbitration Agreement?** This is a decision that each team member must make. You are welcome to do so, and Life Time is giving you 15 days to opt of the Agreement if you do not want to participate in the arbitration program, unless you work at a club in Missouri.

**Am I required to sign the Mutual Arbitration Agreement?** New hires must sign the agreement as a condition for employment at Life Time; however, you may opt-out of the agreement within 15 days if you wish to do so. If you are a current Team Member, you need not sign the agreement. You also may opt-out of the agreement within 15 days if you wish to do so. Otherwise, you will be bound by the agreement. Please note that the opt-out option is not available to new and current Team Members in Missouri.

**What happens if I do not agree to the Mutual Arbitration Agreement?** Agreeing to arbitration is a condition for employment at Life Time, but you may opt-out of the agreement within 15 days if you wish to do so, unless you work at a club in Missouri.

**Am I still bound by the Mutual Arbitration Agreement after I leave my employment with Life Time?** Yes, the terms of the Agreement continue to apply to all employment-related claims between you and Life Time (as set forth in the Agreement), even after your employment with Life Time has ended.

*Id.*

### C.    Reulbach Received And Accepted The Arbitration Agreement.

Reulbach received repeated paper and electronic notices of the TMC Program and Mutual Arbitration Agreement. In fact, he specifically and affirmatively acknowledged his electronic receipt of those documents. Despite that fact, Reulbach did not exercise his contractual right to opt out of arbitration.

On June 21, 2019, Life Time mailed a copy of the TMC Program and Mutual Arbitration Agreement to Reulbach's home address. Fredricks Decl., ¶¶ 14-15.  Life Time mailed the copy of the Program and Agreement to Reulbach through the U.S. mail to the home address he provided, using sufficient postage.  *Id.* at ¶ 14.    The mailing was not returned as undeliverable. *Id.* at ¶ 15.

Then, on June 24, 2019, Life Time electronically transmitted the TMC Program and Mutual Arbitration Agreement to Reulbach's Workday profile. *Id.* at ¶ 16. Workday is a human-resources software system Life Time uses for team member and other enterprise resource planning functions. *Id.* at ¶ 17. Every Life Time team member has an individual Workday profile and is expected to use Workday to access employment documents like paystubs, personnel information, benefit information, and communications from the company. Timekeeping Life Time team members (like Reulbach) are required to use Workday to track and record their working hours. *Id.* Team members can access Workday on the Life Time desktop computers and iPads they use while working at the

facilities. *Id*. at ¶ 19. They can also access Workday using their own personal laptops and mobile devices at any time if they choose to do so. *Id*.

In order to access Workday, each team member must input their own individual employee ID number/username and password. *Id*. at ¶ 20. In addition, depending on the physical location of a team member's login activity, they may also need to satisfy a two-factor authentication security process, which is also unique to the individual team member. *Id*. Depending on the communication, team members may be presented with a pop-up message requesting the team member electronically acknowledge receipt of a particular Company communication. Team members may resolve the communication by submitting their electronic acknowledgment or saving it for later.

When Reulbach logged in to Workday on or after June 24, 2019, he was presented with the following screen:

> **Instructions:** Please read this important announcement regarding Team Member Care (TMC), a new multi-option program Life Time has adopted for resolving Team Member disputes that includes an arbitration program. All Team Members at Life Time's clubs (outside of New Jersey) are covered by the Mutual Arbitration Agreement. Other than Missouri, Team Members have the choice to opt out of the program within days of receiving the Agreement. More information about TMC, the arbitration program, and a copy of the Mutual Arbitration Agreement is enclosed in this document.
>
> **Signature Statement:** Please note that you do not need to acknowledge receipt of these documents through Workday. Whether or not you acknowledge receipt, you are automatically covered by Team Member Care (TMC) and the Mutual Arbitration Agreement (although Team Members, other than in Missouri, have the choice to opt out of the Mutual Arbitration Agreement within 15 days of receiving the Agreement). These documents are being sent through Workday so you can access information related to TMC and the Mutual Arbitration Agreement at your convenience.

*Id.*, ¶ 21. This page urged Reulbach to "[p]lease read this important announcement regarding Team Member Care (TMC), a new multi-option program Life Time has adopted for resolving Team Member disputes that includes an arbitration program." *Id*. The complete TMC Program and Mutual Arbitration Agreement was presented as a blue hyperlink reading "Team Member Care US (June 2019)," next to an icon of a PDF document. *Id*. at ¶ 22. Reulbach was able to click on the hyperlink or icon to read the complete TMC Program and Mutual Arbitration Agreement. *Id*. at ¶ 23. The communication further requested that Reulbach acknowledge his receipt of the communication, but permitted him to click "Save for Later" or "Cancel." *Id*.  Reulbach decided to provide his electronic signature affirmatively acknowledging his electronic receipt of the TMC Program and Mutual Arbitration Agreement on September 30, 2019.  *Id*.

Reulbach also received notice of the Mutual Arbitration Agreement in other ways. *Id*. at ¶ 25. On June 24, 2019, Life Time uploaded and posted the TMC Program and Mutual Arbitration Agreement on LT Pulse, LT Grid, and LT Central, three online intranet locations to which Life Time posted official company documents. *Id*. at ¶ 26. Reulbach had easy access to these intranet locations using Life Time devices at its facilities, and he could also access them remotely over the internet. *Id*.

Additionally, on or about June 24, 2019, the Beachwood, Ohio facility where Reulbach worked posted a one-page overview of the TMC Program and Mutual Arbitration Agreement. *Id*. at ¶ 28. This summary was, and still is, posted outside of the administrative office along with other workplace posters. *Id*. at ¶ 29. Reulbach had occasion to frequent this location because it is where mail is delivered and the printer is located. *Id*.

Life Time's Employee Relations team also conducted trainings for General Managers and Department Managers—including those in Ohio—regarding the TMC Program and Mutual

Arbitration Agreement. *Id*. at ¶ 12. During the training, the Employee Relations team provided the General Managers and Department Managers with an overview of the TMC Program and Mutual Arbitration Agreement so they could help explain the materials to their team members and answer any questions the team members might have. *Id*.

As noted above, although not required by law, Life Time provided team members with the opportunity to opt out of the arbitration agreement. The TMC Program and Mutual Arbitration Agreement specifies that a team member may opt out of arbitration within 15 days of receipt by sending written notice to Life Time. *Id*. at ¶ 31. Life Time highlighted the ability to opt out of the agreement in multiple places, including in the Mutual Arbitration Agreement itself, in the TMC Program and Mutual Arbitration Agreement FAQs, on the Workday screen communicating the program, on the one-page overview of the program posted in the clubs, and in trainings about the program and agreement. *Id*. at ¶¶ 10, 21, 22, 31.

Life Time maintains business records regarding all team members who have sent notice indicating their intent to opt out. *Id*. at ¶ 32. Reulbach did not submit any notice expressing a desire to opt out of the TMC Program and Mutual Arbitration Agreement. *Id*. at ¶ 34.

## II.  STANDARD OF REVIEW

The FAA mandates that all arbitration agreements (with limited exceptions not applicable here) "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is well settled that the FAA reflects a strong federal policy favoring the enforceability of arbitration agreements. *See, e.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (determining that Section 2 of the FAA establishes "'a liberal federal policy favoring arbitration agreements'") (citations omitted). Indeed, the Supreme Court has explained that "the 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S.

4831-3121-6361

333, 344 (2011) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Supreme Court precedent construing motions to compel arbitration under the FAA has "repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' . . . and 'a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Id*. (first quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and second quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr., Corp.*, 460 U.S. 1, 24 (1983)). The FAA's "key provision" provides that "an arbitration agreement must ordinarily be treated as 'valid, irrevocable and enforceable.'" *Kindred Nursing Cntrs. Ltd. P'hip v. Clark*, 137 S.Ct. 1421, 1428 (2017) (quoting 9 U.S.C. § 2).

Under Section 4 of the FAA, a court must order arbitration if the petitioning party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under [a] written agreement for arbitration . . ." 9 U.S.C. § 4. Section 3 of the FAA requires the imposition of a stay by stating, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under any such agreement, ***shall** on the application of one of the parties **stay** the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .*" 9 U.S.C. § 3 (emphasis added).

### III.   ARGUMENT

The Court should compel individual arbitration of Reulbach's claims and stay the instant action pending the resolution of the arbitration proceeding as required by the FAA and controlling Supreme Court authority.

### A.      The Court Should Compel Arbitration And Stay This Lawsuit.

In determining whether to grant a motion to stay proceedings and compel arbitration, courts must apply a four-pronged test: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be arbitrated; and (4) whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Each of these elements is easily satisfied here.

### i.      The Parties Agreed to Arbitrate.

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 416 (6th Cir. 2011). "Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Id.* Applying Ohio law, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Dantz v. American Apple Group, LLC*. 123 Fed.Appx. 702, 707 (6th Cir. 2005). "For a valid contract to exist, there must be an offer on one side, an acceptance on the other side, and mutual assent between the parties with regard to the consideration for the bargain." *Tidewater Fin. Co. v. Cowns* 197 Ohio App.3d 548, 552, 2011-Ohio 6720, 968 N.E.2d 59, 63 (Ohio App. 1 Dist. 2011).

Mutual assent "ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties." *Dantz*, 123 Fed. Appx. at 707 citing *Restatement (Second) of Contracts* § 22 (1981). "Under Ohio law, to constitute consideration, a performance or a return promise must be bargained for." *Id.* at 708. "A promise is bargained for if it is sought

10

by the promisor in exchange for his promise and is given by the promisor in exchange for that promise." *Rupert v. Macy's, Inc.*, 2010 U.S. Dist. LEXIS 54050, *7 (N.D. Ohio 2010).

Here, the objective conduct of the parties amply demonstrates the formation of an agreement to arbitrate. First, with respect to Life Time's offer, Life Time sent Reulbach both written and electronic copies[1] of the Mutual Arbitration Agreement. Fredricks Decl., ¶¶ 14-16. There is a rebuttable presumption that mail was received by the addressee where the sender properly addressed the mailing with sufficient postage and the item was deposited in the mail. *Carroll v. Comm'r*, 71 F.3d 1228, 1232 (6th Cir. 1995) (quoting *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992); *In re: Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985).  The same rebuttable presumption applies to email.  *Am. Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) (quoting *Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2002) (internal quotation marks omitted) (applying the rebuttable presumption of delivery to the U.S. mail, facsimiles and emails).  *See also Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013) ("[a] presumption exists that [an email is] properly sent, received, and read."); *Nart v. Open Text Corp.*, No. A-10-cv-810, 2013 WL 442009, at *2 n. 4 (W.D. Tex. Feb. 5, 2013) (collecting cases applying the presumption of delivery to emails sent to valid addresses).

Accordingly, there can be no dispute that Reulbach received the Mutual Arbitration Agreement. Via Workday, Reulbach expressly acknowledged receipt of the electronic version of the TMC Program and Mutual Arbitration Agreement. In addition, Life Time also made the document easily available on Life Time's intranet sites and prominently posted a sign in Reulbach's workplace summarizing its terms. *Id.* at ¶¶ 24, 25, 27, 28. Life Time also trained

---

[1] An offer may come in the form of an email informing an employee that the employer has created an arbitration program for resolving disputes. *See Uszak v. AT&T, Inc.*, 2015 U.S. Dist. LEXIS 194986, *5 (N.D. Ohio Oct. 6, 2015).

managers (including Reulbach's manager) so they could help educate team members about the program and respond to team member questions. *Id.* at ¶ 12. Additionally, Life Time provided team members including Reulbach a detailed and helpful "FAQ" sheet to answer potential questions about the Mutual Arbitration Agreement. *Id.* at ¶ 11. Given Reulbach's affirmative electronic acknowledgment of receiving the TMC Program and Mutual Arbitration Agreement, along with the myriad ways Reulbach was provided notice of the Mutual Arbitration Agreement— which included several electronic, mailed, posted, and personal delivery methods—there can be no doubt that an offer was made and that Reulbach had reasonable notice of the agreement to arbitrate.[2] Federal courts have specifically held that an employer's electronic delivery of an arbitration agreement to an employee creates a binding agreement to arbitrate under the FAA. *Gezu v. Charter Commc'ns.*, No. 3:20-cv-01476, 2021 WL 419741, at *5 (N.D. Tex. Jan. 7, 2021) (rejecting employee's claim that he did not recall opening the email announcement of the arbitration program and granting motion to compel arbitration); *Abdullah v. Am. Express Co*., No. 3:12-cv-0137, 2012 WL 6867675 (M.D. Fla. Dec. 19, 2012) (granting motion to compel arbitration despite employee affidavit stating that he did not receive the email announcement of the arbitration program).

---

[2] Although, in the instant matter, Reulbach explicitly acknowledged receipt of the electronic version of the TMC Program and Mutual Arbitraiton Agreement, it is immaterial whether plaintiff actually read the agreement. It is only required that the employee receive reasonable notice of the agreement to arbitrate. *See Mannix v. City of Monroe*, 348 F. 3d 526, 536 (6th Cir. 2003) (holding that distribution of a policy containing an agreement to arbitrate constitutes reasonable notice, regardless of whether the affected employee actually reads it). In *Mannix*, the Sixth Circuit emphasized the importance of the notice provided to employees including posting the new policies on an internal database available to employees and spreading the word through meetings. *Id.* Life Time took all of these steps and more to ensure affected team members had reasonable notice of the agreement to arbitrate. *See also Highstone v. Westin Eng'g*, 187 F.3d 548, 552-53 (6th Cir. 1999) (finding that the defendant had "satisfied its burden by reasonably notifying affected employees of the changes" by publishing the revisions online, making the policies available online, sending two email messages to all employees notifying them of changes, and providing notice of the changes during staff meetings).

Second, Reulbach conclusively accepted the Mutual Arbitration Agreement. Reulbach accepted the Mutual Arbitration Agreement by not opting out of it, despite affirmatively acknowledging receipt of a communication from Life Time advising him of his ability to opt out of arbitration, along with repeated communications advising him of the same. Fredricks Decl., ¶¶ 31, 32, 34. In the Sixth Circuit, an employee's failure to take advantage of an available opt-out procedure constitutes assent to the agreement to arbitrate without a signed arbitration agreement. *See Glass v. Tradesmen Int'l, LLC*, 2020 U.S. Dist. LEXIS 28088, *38 (N.D. Ohio Feb. 19, 2020) ("By failing to opt out and continuing her employment with Tradesmen past October 21, 2016, Glass manifested her assent to the Arbitration Agreement."); *Legair v. Circuit City Stores, Inc.*, 213 F. App'x 436, 439 (6th Cir. 2007) (finding "plaintiff by his conduct demonstrated his agreement to be bound" because he "failed to take the required action to opt out"); *Tillman v. Macy's, Inc.*, 735 F.3d 453, 455 (6th Cir. 2013) (holding that where employer provides sufficient notice of its offer to enter into an arbitration agreement, employee accepts by continuing employment and not returning opt-out form "notwithstanding the absence of an employee-signed written agreement to arbitrate"); *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 696 (M.D. Tenn. 2020) (where an arbitration agreement's unambiguous terms indicate an individual may only opt out by following prescribed steps, the filing of lawsuit does not meet the employee's burden of demonstrating that he effectively opted out of the agreement).

Finally, there were two forms of lawful consideration supporting the arbitration agreement. The agreement to arbitrate is mutual—it binds both Reulbach and Life Time to arbitrate claims each may have against the other. *See* Fredricks Decl. Ex. 1. Such a mutual agreement to arbitrate establishes valid consideration under Ohio law even when the agreements to arbitrate are not "equal" because of the class action waiver. *Glass*, 2020 U.S. Dist. LEXIS 28088, *33-35 (holding

the Arbitration Agreement is supported by adequate consideration in the parties' mutual promise to arbitrate, that "mutuality does not require 'equally balanced' terms, and that a "class action waiver is irrelevant to the determination of whether [the employer] provided valid consideration").

In addition, Ohio recognizes that an employee's act of continuing to work for an employer after the employer stated that doing so would constitute acceptance of an arbitration agreement is sufficient to demonstrate the employee's assent to or acceptance of its terms. For example, in *Dantz*, the defendant sent a letter to employees providing that their acceptance of an arbitration agreement would be expressed by their "continuing employment with the Company from and after October 1, 2001." 123 F. App;x at 704. On appeal, the Sixth Circuit agreed with the district court's reasoning that the "plaintiff, an at-will employee, manifested her assent in the very way that the Company requested, that is, by continuing her employment after October 1, 2001." *Id.* at 708; *see also Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 867 (S.D. Ohio 2003) (holding plaintiff's "act of continuing to work for NCR after it stated that doing so would constitute acceptance of the new term of employment demonstrates his assent to, or acceptance of, same"). Accordingly, Reulbach received consideration for his agreement to arbitrate.

In summary, there was an offer, acceptance, and consideration and an enforceable Mutual Arbitration Agreement was thereby formed between Life Time and Reulbach.

### ii. The Claims Asserted by Reulbach Are Within the Scope of the Arbitration Agreement.[3]

The question of "whether a particular dispute is within the class of those disputes governed by the arbitration clause . . . is a matter of federal law." *Westbrook Int'l, LLC v. Westbrook Techs.*,

---

[3] Life Time addresses whether Plaintiff's claims are within the scope of the agreement to arbitrate because the "scope of the agreement" is one of the four elements of the Sixth Circuit's test. Life Time expressly reserves its contention that, pursuant to the Arbitration Agreement, the Arbitrator has the exclusive authority to determine "Covered Claims" under the Agreement. *See* Ex. 1.

17 F. Supp. 2d 681, 683 (E.D. Mich. 1998). The FAA promotes "a liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Claims under the FLSA and state wage and hour law are clearly arbitrable. "Employment-related statutory claims ... may be validly subject to an arbitration agreement enforceable under the FAA." *Morgan v. United Healthcare Servs., Inc.*, 1:12-cv-676, 2013 U.S. Dist. LEXIS 61723, *4 (S.D. Ohio Apr. 30, 2013). Further, courts routinely find that an employer may enter into a binding arbitration agreement for any claims under the FLSA. *Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-2140, 2011 U.S. Dist. LEXIS 8085, *2 (W.D. Tenn. Jan. 27, 2011) (citing cases); *see also Madhat v. Lipsey Communs., LLC*, 2020 U.S. Dist. LEXIS 161272, *23 (N.D. Ohio Sep. 3, 2020).

Life Time and Reulbach agreed to arbitrate "Covered Claims" consisting of "those brought under any statute, regulation, law, local ordinance, contract, covenant (express or implied), or common law relating to employment with Life Time." Ex. 1, ¶ 8. These specifically include claims related to "compensation." *Id.* As shown in his Complaint, Reulbach brings statutory claims under the FLSA and Ohio state law seeking to recover overtime compensation. Dkt. 1 at Ex. A, ¶¶ 32-33. All of Reulbach's claims relate to his "employment with Life Time" and fall squarely within the scope of the Mutual Arbitration Agreement. Accordingly, plaintiff's FLSA claims are subject to arbitration.

### iii. Congress Intended FLSA Claims to be Arbitrated.

"[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Congress neither stated nor intended for FLSA claims to be non-arbitrable. The Sixth Circuit Court of Appeals has already held that FLSA claims *may* be

arbitrable so long as the arbitral forum provided for allows for the effective vindication of the claim. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000)). There is no Congressional intent evinced in the text of the FLSA or its legislative history to support the proposition that Congress mandated a judicial forum for resolution of FLSA claims. *Mitsubishi Motors Corp. v. Soler-Chrysler Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (the FLSA does not "evince[] an intention to preclude a waiver of judicial remedies for the statutory rights at issue").The overwhelming weight of persuasive authority supports this conclusion. Each circuit court to address this issue has concluded that the FLSA does not contain the "contrary congressional command" necessary to override the FAA's mandate. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002).

The Sixth Circuit has specifically held that an employee asserting an FLSA claim *can* waive her right to a judicial forum and instead arbitrate the claim. *See, e.g., Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 376-77 (6th Cir. 2005); *Floss*, 211 F.3d at 313. The Sixth Circuit in *Floss* opined that the broader policies furthered by an FLSA claim are not hindered when that claim is resolved through arbitration. *Floss*, 211 F.3d at 313. The Sixth Circuit pointed out that the Supreme Court has held that "both judicial and arbitral fora 'can further broaden social purposes.'" *Id.* (quoting *Gilmer*, 500 U.S. at 28). The Sixth Circuit held that an employee can waive his right to a judicial forum so long as the specific arbitral forum provided under an arbitration agreement "allow[s] for the effective vindication of [the employee's] claim." *Id* at 313-

314 (ultimately concluding that the plaintiffs-employees did not need to establish the unsuitability of the arbitral forum in order to litigate their statutory claims in federal court because the plaintiffs-employees were not contractually obligated to submit their federal statutory claims to arbitration). If a provision of an arbitration agreement prevents the vindication of statutory rights, then "those rights cannot be subject to mandatory arbitration under that agreement." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (en banc).

Plaintiff cannot satisfy his burden that Congress intended to preclude arbitration of his claims. Arbitrations of wage claims are extremely common and the applicable authority requires the Court to conclude that Congress intended FLSA claims to be arbitrated.

### iv.    The Case Should Be Stayed Pending Arbitration.

FAA § 3 provides that when the Court finds the issues arbitrable, "the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." The Supreme Court has stated that when a dispute is subject to arbitration, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "If the court finds that some of Plaintiff's claims are referable to arbitration under a written arbitration agreement, the court shall stay these proceedings pending arbitration." *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 764 (N.D. Ohio 2009). Accordingly, the Court should stay this case and retain jurisdiction until the arbitration is complete.

Accordingly, as set forth above, the Court should stay this case and compel individual arbitration of Reulbach's claims because (1) the parties agreed to arbitrate; (2) Plaintiff's claims are within the scope of that agreement to arbitrate; (3) there is no authority for the proposition that

4831-3121-6361

Congress did not intend Plaintiff's claims to be arbitrated; and (4) the case should be stayed pending arbitration. In accordance with 9 U.S.C. § 3, the Court should stay all proceedings pending arbitration. As explained below, Reulbach must arbitrate his claims on an individual basis, not as the representative of a putative class.

### B.      Reulbach Must Arbitrate On An Individual Basis.

"Congress has instructed federal courts to enforce arbitration agreements according to their terms – including providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1619 (2018). In *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the Supreme Court made clear that class-action waivers are valid and enforceable under the FAA. *See id.* at 748. The Supreme Court reasoned the enforcement of class action waiver provisions in arbitration agreements is required by the FAA because:

> The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' . . . . In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit ***with whom*** a party will arbitrate its disputes.

131 S. Ct. at 1748-49 (internal citations omitted; emphasis added).

The Supreme Court has rejected arguments that a waiver of class actions in an arbitration agreement would contravene substantive law and has upheld a waiver even where the costs of individually arbitrating a federal statutory claim exceed the potential recovery. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *see also Hopkinton Drug, Inc. v. CaremarkPCS, LLC*, 77 F. Supp. 3d 237, 247-48 (D. Mass. 2015) (determining that "[i]n *Concepcion*, the Court held that the Federal Arbitration Act overruled state laws that sought to mandate class action procedures in consumer arbitration cases" and finding that "[i]n *American Express*, the Supreme

Court emphasized that, absent a clear federal statutory command to the contrary, class action waivers are valid.").

The Mutual Arbitration Agreement contains an unambiguous class-action waiver stating that claims "will be arbitrated only on an individual basis, and Life Time's team members waive the right to participate in or receive monetary or other relief from a class, collective, consolidated, or other representative proceeding." Ex. 1, ¶ 9. In accordance with this controlling Supreme Court precedent, this Court should apply the class-waiver provisions and compel Plaintiff to arbitrate his claims against Life Time through an individual arbitration proceeding.

### C. The Court Should Order Plaintiff Pay Defendants' Fees and Costs For Filing This Motion.

On April 26, 2021, counsel for Defendants sent an email to counsel for Plaintiff summarizing the above-referenced instances in which Reulbach received notice of the Mutual Arbitration Agreement and his failure to exercise his contractual right to opt out of arbitration. *See* Declaration of Robert J. Bowes, May 20, 2021 ("Bowes Decl."), ¶ 2. Counsel for Defendants respectfully requested that Reulbach abide by the terms of the Arbitration Agreement, agree to stay this case and proceed individually in arbitration. *Id.* at ¶ 3. On April 28, 2021, counsel for the Parties met and conferred over the phone. *Id.* at ¶ 4. Counsel for Plaintiff refused to arbitrate Plaintiff's claims, providing no reasons for their client's refusal to abide by the terms of the Agreement. *Id.* at ¶ 5.

By refusing to consent to individual arbitration and providing no reason for refusal to abide by the terms of the Mutual Agreement to Arbitrate, Reulbach has "unreasonably and vexatiously" multiplied the proceedings. 28 U.S.C. § 1927. Generally, each party in federal litigation pays its own attorneys' fees except in circumstances "where a party or counsel have [sic] acted in bad faith in the instigation or conduct of litigation." *Monroe Auto Equip. Co. v. Int'l Union, United Auto.,*

19

*Aerospace & Agric. Implement Workers*, 981 F.2d 261, 270 (6th Cir. 1992) (quoting *Ray A. Scharer & Co. v. Plabell Rubber Prod., Inc.*, 858 F.2d 317, 320 (6th Cir. 1988)). In such circumstances, "the court has the inherent authority to assess an award of attorneys' fees against either the litigant or his attorney." *Id.*

Because federal policy favors arbitration, a less demanding "without justification" standard applies in cases involving refusals to arbitrate. *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382-83 (9th Cir. 1984) (holding that an "award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration"). Plaintiff has no good faith basis for refusing to abide by the mutual agreement to arbitrate. Plaintiff's refusal to provide any reason for opposing Defendants' arbitration request alone satisfies the "without justification" standard sufficient to award Defendants' its fees and costs in preparing this Motion.

## CONCLUSION

For all of the foregoing reasons, Life Time respectfully requests that this Court enter an order compelling individual arbitration of Reulbach's individual claims, staying this lawsuit pending the outcome of arbitration and ordering Plaintiff pay Defendants' costs and fees for preparing this Motion.

Dated:  May 20, 2021

Respectfully submitted,

**JACKSON LEWIS, P.C.**

*/s/ Robert J. Bowes, III*
Robert J. Bowes, III (0092871)
Park Center Plaza I, Ste. 400
6100 Oak Tree Boulevard
Cleveland, OH  44131
(216) 750-0404; (216) 750-0826 (Fax)
Robert.Bowes@jacksonlewis.com

4831-3121-6361

Eric R. Magnus (*to be admitted Pro Hac Vice*)
171 17th Street, NW. Suite 1200
Atlanta, GA  30363
(404) 525-8200; (404) 525-1173 (Fax)
Eric.Magnus@jacksonlewis.com

*Attorneys for Defendants*

4813-2564-9897, v. 1

21