**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Craig Reulbach,** *on behalf of himself and all others similarly situated*, | CASE NO. 1:21 CV 1013 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| Vs. | |
| **Life Time Fitness, Inc., et al.,** | **Memorandum of Opinion and Order** |
| Defendants. | |

## INTRODUCTION

This matter is before the Court upon defendants' Motion to Compel Arbitration, to Stay Proceedings, and for Attorneys' Fees (Doc. 6). This case arises out of plaintiff's employment with defendants. For the following reasons, this motion is GRANTED IN PART and DENIED IN PART.

## FACTS

Plaintiff, Craig Reulbach, filed this lawsuit on behalf of himself and all others similarly situated, against defendants Life Time Fitness, Inc.; LTF Club Operations Company, Inc.; and LTF Club Management Company, LLC (collectively, "defendants") in the Cuyahoga County

1

Court of Common Pleas. Defendants removed the case to this Court on the basis of federal question jurisdiction.

Defendants are owners and operators of health and fitness clubs located throughout the United States. Plaintiff was employed by defendants from March 2010 until February 2021. He was a fitness instructor at defendants' Beachwood, Ohio location. He was non-exempt and paid hourly.

According to the Complaint, plaintiff and other similarly situated fitness instructors were not compensated for time spent at required (1) team meetings; (2) fitness equipment cleaning; (3) telephone calls to members; and (4) online health and fitness learning. As a result, plaintiff and other similarly situated fitness instructors were not paid the overtime compensation owed to them.

The Complaint also alleges that plaintiff was "ridiculed because of his age" throughout his employment with defendants. His co-workers would regularly refer to him as "old man" and his general manager told him that he was "not young anymore" and recommended that he "slow down." The Complaint alleges that potential clients were driven away from plaintiff because of his age. Fitness classes were also taken away from plaintiff, which caused plaintiff to lose money and benefits.

The Complaint contains six claims for relief. Counts One through Three are claims brought by plaintiff on behalf of himself and all others similarly situated. Count One is a claim for Fair Labor Standards Act ("FLSA") violations. Count Two is a claim Ohio Minimum Fair Wage Standards Act violations. Count Three is a claim for unjust enrichment. Individual Counts One through Three are plaintiff's individual claims. Individual Count One is a claim for

hostile work environment, Individual Count Two is a claim for wrongful discharge, and Individual Count Three is a claim for unjust enrichment.

Written documentary evidence submitted to the Court establishes the following.[1] Defendants submit the declarations of Kelly Fredricks, an employee relations business partner for Life Time, Inc. ("Life Time"). Fredricks avers that in June 2019, Life Time introduced a Team Member Care Program ("TMC") and Mutual Arbitration Agreement ("Agreement") to its Ohio facilities and employees. The Agreement contains the following language:

> <u>Mutual Agreement to Arbitrate; Claims Covered by the Agreement</u>. Any "Covered Claims" that arise between team members and Life Time and its parents, subsidiaries, affiliates, their current or former officers, directors, employees, agents and/or their successors and assigns (collectively also referred to as "**Life Time**"), will be submitted to and determined exclusively by binding arbitration in accordance with the Federal Arbitration Act. "**Covered Claims**" are those brought under any statute, regulation, law, local ordinance, contract, covenant (express or implied), or common law relating to employment with Life Time, including but not limited to those concerning employee benefit plans, compensation, discrimination, harassment, retaliation, recovery of bonus, tuition reimbursement or relocation benefits, leave of absence, disability or other accommodation, or termination of employment.
>
> **Except as expressly provided in this Agreement, arbitration is the only forum for resolving Covered Claims, and Life Time and its team members waive the right to a trial before a judge or jury in federal or state court for Covered Claims.** The Arbitrator will have the authority to award the same damages and other relief that would have been available in court under applicable law.

---

[1] When determining whether a valid and enforceable arbitration agreement exists, the Court may appropriately "look beyond the complaint at pleadings and documents submitted by either party." *Anderson v. Delta Funding Corp.*, 316 F. Supp.2d 554, 558 (N.D. Ohio 2004). *See also Andrews v. TD Ameritrade, Inc.,* 596 Fed.Appx.366, 371 (6th Cir. 2014) ("The district court must undertake a limited review of evidence to determine whether it has the authority to hear a case or compel arbitration.")

3

> \*\*\*
>
> Option to Opt-Out of Arbitration. Arbitration is not a mandatory condition of employment at Life Time, except for team members working at Life Time clubs in Missouri. Except for team members in Missouri, any Life Time team member may elect not to receive the benefits of arbitration by notifying Life Time in writing of the team member's desire to opt out of this arbitration provision by sending a letter, by certified mail, to the following address, within 15 days after the team member receives this Agreement, stating the team member's name and intent to opt out of this arbitration provision:
>
> **Life Time Arbitration Coordinator**
> Life Time, Inc.
> 2902 Corporate Place
> Chanhassen, MN 55317
>
> Life Time team members will not be subject to retaliation if they exercise their right to opt out of this arbitration provision. If a team member does not opt out of this arbitration provision within the 15-day period, that team member and Life Time shall be bound by the terms of this arbitration provision.

The Agreement also contains the following language regarding class and collective actions:

> Waiver of Class, Collective, Consolidated, or other Representative Claims. Covered claims will be arbitrated only on an individual basis, and Life Time's team members waive the right to participate in or receive monetary or other relief from a class, collective, consolidated, or other representative proceeding. Neither Life Time nor its team members may bring a claim on behalf of other individual(s). An Arbitrator hearing a claim may not combine more than one individual's claim or claims into a single case or arbitrate any form of a class, collective, consolidated, or other representative proceeding.
>
> Any question or dispute concerning the scope or validity of the above two paragraphs will be decided by a court of compentent jurisdiction and not by an Arbitrator. If a court determines that one or both of the two paragraphs are invalid, Life Time and its team members waive any right to arbitration of class, collective, consolidated, or other representative claims, and Life Time and its team members instead agree and stipulate that such claims will be heard only before a court.
>
> Fredericks avers that on June 21, 2019, Life Time mailed the Agreement via U.S.

mail to plaintiff's home address. The Agreement was not returned as undeliverable. On

4

June 24, 2019, Life Time electronically sent the Agreement to plaintiff's individual Workday profile. Workday is a software program used by Life Time's employees to access pay stubs, personnel information, benefit information, and other important communications. Workday is also used by Life Time's employees to clock in and out of work.

When an employee has a new document to review in Workday, a new mail alert appears on their home screen when they log in. When Life Time's employees logged into Workday after June 24, 2019, they saw the following message:

> Instructions: Please read this important announcement regarding Team Member Care (MC), a new multi-option program Life Time has adopted for resolving Team Member disputes that includes an arbitration program. At[sic] Team Members at Life Time's clubs (outside of New Jersey) are covered by the Mutual Arbitration Agreement. Other than Missouri, Team Members have the choice to opt out of the program within 15 days of receiving the Agreement. More information about TMC, the arbitration program, and a copy of the Mutual Arbitration Agreement is enclosed in this document.
>
> Signature Statement: Please note that you do not need to acknowledge receipt of these documents through Workday. Whether or not you acknowledge receipt, you are automatically covered by Ter[sic] Member Care (TMC) and the Mutual Arbitration Agreement (although Team Members, other than in Missouri, have the choice to opt out of the Mutual Arbitration Agreement within 15 days of receiving the Agreement). These documents are being sent through Workday so you can access information related to TMC and the Mutual Arbitration Agreement at your convenience.

Within this message, the Agreement and the TMC were presented as a blue hyperlink, next to an icon of a PDF document. Underneath this message, the employee

5

could click either "I Agree," "Save for Later," or "Cancel." Fredericks avers that on September 30, 2019, plaintiff clicked "I Agree" to this message on his Workday profile.

Plaintiff submits his own declaration, in which he avers that he never received the Agreement in the mail. He also asserts that none of his supervisors or managers ever referenced or spoke to him regarding the Agreement. He maintains that he never saw or agreed to the Agreement on Workday. Plaintiff asserts that he was unable to access Workday from home and was on medical leave from May 20, 2019 through August 11, 2019. Plaintiff avers that he did not become aware of the Agreement until May 28, 2021, at which time he did submit an opt-out letter to Life Time. Attached to this declaration is documentation of plaintiff's approved medical leave from May 20, 2019 through August 11, 2019.

In response, defendant submits the declaration of Jignesh Patel, the manager of Workday Operations and Process Involvement at Life Time. Patel attests that Workday maintains logs of all user activity, including plaintiff's. Patel avers that he reviewed plaintiff's Workday activity and generated several reports based upon this activity. These reports confirm that plaintiff was working at the Beachwood, Ohio Life Time fitness club on September 30, 2019, because he swiped his badge and entered time for fitness classes taught that day. That same day, plaintiff logged onto his Workday profile three times: twice on his personal cell phone and once from a desktop computer at the Beachwood, Ohio club. At 2:48 p.m., while on the desktop computer, plaintiff clicked the "I Agree" icon on the message asking him to acknowledge receipt of the Agreement.

This matter is now before the Court upon defendants' Motion to Compel

Arbitration, to Stay Proceedings, and for Attorneys' Fees.  Plaintiff opposes the motion in its entirety.

**STANDARD OF REVIEW**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to employment contracts with arbitration provisions. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).  The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration and permits a stay of other proceedings if claims are referred to arbitration.  9 U.S.C. §§ 3-4.

The Sixth Circuit has set forth four tasks a court must engage in when considering a motion to stay proceedings and compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*McGee v. Armstrong,* 941 F.3d 859, 856 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000)).  "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."  *Stout*, 228 F.3d at 714.

If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. 9 U.S.C. § 4.  However, in order to establish that the validity of the arbitration agreement is "in issue," the party opposing arbitration bears the burden of proving that there is a "genuine issue of material fact as to the validity of the agreement to

arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). This burden "mirrors that required to withstand summary judgment in a civil suit." *Id.* Accordingly, a court must, viewing the facts in the light most favorable to the non-moving party, determine "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id. See also Danley v. Encore Capital Group, Inc.,* 680 Fed.Appx. 394, 397 (6th Cir. 2017).

**ANALYSIS**

Defendants argue that the Complaint must be stayed because plaintiff's claims are subject to arbitration. Defendants assert that the arbitration provision contained within the Agreement is valid and enforceable under the FAA and relevant case law. Plaintiff argues that no valid arbitration agreement exists between him and defendants.

The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.,* 507 F.3d 967, 972 (6th Cir.2007) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). However, because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation and citation omitted). Accordingly, a court reviews "the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright,* 507 F.3d at 972; *see also Tillman v. Macy's, Inc*., 735 F.3d 453, 462 (6th Cir.2013).

The parties agree that Ohio contract law applies. In Ohio, "[a] contract is generally

defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Rayess v. Educ. Comm'n for Foreign Med. Graduates,* 983 N.E.2d 1267, 1271 (2012) (quoting *Kostelnik v. Helper,* 770 N.E.2d 58, 61 (2002)). "Mutual assent 'ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.'" *Dantz v. Am. Apple Grp., LLC*, 123 Fed.Appx. 702, 707 (6th Cir. 2005) (internal citations omitted).

Upon review, the Court finds that there is a valid agreement to arbitrate between the parties. Defendants' electronic message via Workday regarding the Agreement constituted an offer to enter into an agreement to arbitrate future claims. This electronic message specifically informed plaintiff that Life Time had adopted an arbitration program for resolving employee disputes. This message also specified that the failure to opt out within 15 days would bind him to the Agreement. This message also included the full text of the Agreement via a hyperlink.

The evidence also indicates that plaintiff accepted defendants' offer and manifested his assent to be bound. Plaintiff's Workday records confirm that plaintiff logged onto the Workday system on September 30, 2019, and viewed the message containing the Agreement. He then clicked the "I Agree" button at the bottom of the page, acknowledging that he had received the message and the attached Agreement.[2] Plaintiff then continued to

---

[2] The Court notes that defendants did not provide plaintiff's Workday records until they filed a Reply. However, because defendants provided these records in response to plaintiff's argument that he never saw the Agreement on Workday,

9

work for defendants without opting out of the Agreement within 15 days. Such actions evidence plaintiff's assent to be bound by the Agreement. Indeed, an "employee who signs a form . . . indicating that he understands his obligations if he chooses not to participate in an arbitration program, fails to take the required action to opt out, and never provides any other notice to management that he intends to opt out, has 'demonstrated his agreement to be bound' by an arbitration agreement." *Uszak v. AT&T Mobility Services, LLC,* 658 Fed.Appx. 758, 763 (6th Cir. 2016).

Plaintiff argues that he did not have actual notice of the Agreement and, therefore, could not have assented to its terms. In support of this argument, plaintiff proffers his own declaration that he never received the Agreement in the mail and never saw the Agreement on Workday. However, defendants have presented evidence establishing that plaintiff did electronically receive notice of the Agreement via Workday and clicked "I Agree" upon viewing this notice. Plaintiff's own self-serving affidavit to the contrary is insufficient to create a genuine dispute of material fact. *See Stephens v. Frisch's Big Boy Rests.*, 2020 WL 4754682, at *3 (S.D. Ohio 2020) ("Plaintiff's naked assertion that she did not sign the arbitration agreement, without more, is insufficient to raise a dispute of material fact regarding the validity of the arbitration agreement or whether she electronically acknowledged the arbitration agreement."), *report and recommendation adopted*, 2020 WL 4748578 (S.D. Ohio 2020); *Morgan v. United Healthcare Servs., Inc.*, 2013 WL 1828940, at *3 (S.D. Ohio 2013) ("In her affidavit, plaintiff . . . indicates she does not 'believe' she

the Court will consider this evidence. Plaintiff did not seek leave to file a surreply or otherwise contest the validity of his Workday records.

submitted an electronic signature 'that agreed to arbitration.' Such conjecture is belied by the record and provides no basis to avoid arbitration . . .To the extent plaintiff suggests she does not remember, this fails to create any issue as to whether the parties had a valid agreement to arbitrate.")[3]

The Court also finds that adequate consideration exists because the promise to arbitrate was mutual. Indeed, the Agreement provides that both Life Time and its employees were waiving "the right to a trial before a judge or jury" and were required to arbitrate all covered claims. A mutual agreement to arbitrate constitutes adequate consideration under Ohio law. *Dantz,* 123 Fed.Appx. at 708–09. *See also Robinson v. Mayfield Auto Grp., LLC*, 100 N.E.3d 978, 984 (Ohio Ct. App. 2017) ("[T]he parties' agreement to arbitrate all disputes serves as consideration . . .") Accordingly, the Court concludes that defendants and plaintiff entered into a valid agreement to arbitrate.

The Court must next determine whether plaintiff's claims fall within the scope of

---

[3] Plaintiff cites to *Sandor v. General Electric Company*, 2016 WL 6868452 (N.D. Ohio 2016) in support of his argument that he did not have actual notice of the Agreement. This case is distinguishable. In *Sandor*, the defendant instituted a new company policy making assent to arbitration a condition of continued employment. The defendant sent its employees, including plaintiff, several emails informing them that the company's arbitration policy had changed. However, none of these emails included the provision that continued employment would constitute an assent to the arbitration policy. Rather, the emails contained a link to the policy which contained this provision. The defendant provided no evidence that plaintiff had actually viewed these emails or clicked these links. The *Sandor* court denied the defendant's motion to compel arbitration, reasoning that plaintiff did not receive "actual notice that she would be bound to arbitrate employment disputes if she showed up to work."

Here, unlike the circumstances in *Sandor*, defendants have presented evidence that plaintiff did view an electronic message informing him of the steps he could take to avoid being bound by an arbitration policy. Moreover, defendant also presented evidence that plaintiff clicked "I Agree" upon viewing this message.

11

the Agreement. A claim falls outside of the scope of the arbitration agreement only if it could be maintained without reference to the contract or transaction subject to the agreement. *Fazio v. Lehman Bros., Inc*., 340 F.3d 386, 395 (6th Cir. 2003).

Here, the Agreement provides:

> Any "Covered Claims" that arise between team members and Life Time and its parents, subsidiaries, affiliates, their current or former officers, directors, employees, agents and/or their successors and assigns (collectively also refereed to as "**Life Time**"), will be submitted to and determined exclusively by binding arbitration in accordance with the Federal Arbitration Act. "**Covered Claims**" are those brought under any statute, regulation, law, local ordinance, contract, covenant (express or implied), or common law relating to employment with Life Time, including but not limited to those concerning employee benefit plans, compensation, discrimination, harassment, retaliation, recovery of bonus, tuition reimbursement or relocation benefits, leave of absence, disability or other accommodation, or termination of employment.

The Court finds that all of plaintiff's claims against defendants fall within the scope of this clause. The Complaint contains the following claims for relief: FLSA violations, Ohio Minimum Fair Wage Standards Act violations, unjust enrichment, hostile work environment, and wrongful discharge. These claims are brought under state and federal statutes and Ohio common law. They all relate to plaintiff's employment with defendants and concern both his compensation and alleged discrimination. Accordingly, all of these claims fall within the definition of "Covered Claims" in the Agreement.[4]

---

[4] The Court also notes that three of plaintiff's claims are collective/class action claims. Defendants argue that plaintiff must arbitrate these claims on an individual basis because the Agreement contains a collective/class action waiver. Plaintiff does not directly respond to this argument. The Sixth Circuit has found similar waivers to be enforceable. *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296–97 (6th Cir. 2018) (rejecting an employee's argument that an arbitration agreement requiring individual arbitration was illegal because it violated the FLSA's collective-action provisions); *McGrew v. VCG Holding Corp.*, 735 F. App'x 210, 211 (6th Cir. 2018) (finding that "individual arbitration agreements

12

Plaintiff argues that because "Covered Claims" are only those claims "that *arise* between team members and Life Time," only claims "that accrued" after the Agreement was in effect would be subject to arbitration. Therefore, plaintiff argues, only his wrongful discharge claim is subject to arbitration. For the following reasons, the Court disagrees.

Plaintiff relies on the Sixth Circuit case of *Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014) to support this reading of the Agreement. However, plaintiff's reliance on *Russell* is misplaced. In *Russell*, the plaintiff had worked for the defendant from 2004-2009. *Id.* at 679. In 2012, the plaintiff filed an employment-related class action against the defendant. *Id.* In January 2013, the defendant re-hired the plaintiff while this class action remained pending. *Id.* At the time of being re-hired, the plaintiff signed an arbitration agreement that covered both individual and class action claims. *Id.* This arbitration agreement provided that arbitration was the "exclusive forum for the resolution of all employment-related disputes . . . [that] *arise* between" the parties. *Id.* (emphasis added). The Sixth Circuit held that this provision did not apply to the already-pending lawsuit. *Id.* The Sixth Circuit found that the text of the agreement indicated that "the parties signed this agreement to head off future lawsuits, not to cut off existing ones." *Id.* at 680. The Sixth Circuit did not, as plaintiff suggests, hold that the word "arise" indicated that the arbitration agreement would not apply to any conduct that occurred prior to the execution of the agreement. Rather, it made the narrow conclusion that the arbitration agreement "could not be read to cover a lawsuit that was already proceeding in court at the time of the

---

are enforceable against both employees and independent contractors").
Accordingly, under the terms of the Agreement, plaintiff must arbitrate all of his claims through an individual arbitration proceeding.

13

agreement's formation." *Hammond v. Floor and Decor Outlets of America, Inc.*, 2020 WL 6459642, *14 (M.D. Tenn. 2020).

Here, by contrast, plaintiff had no pending lawsuit with defendants when the Agreement became effective. His claims did not "arise" until after the Agreement was binding. *See Hammond*, 2020 WL 6459642 at *14. The Agreement contains no language that places a distinction between claims that are based upon events that occurred before and after the adoption of the Agreement. Moreover, the Agreement contains a provision that claims asserted in actions that were already "commenced" before the Agreement was entered into would not be subject to arbitration. A reading of the Agreement as a whole supports a finding that this arbitration policy applies to all employment related disputes, including those claims based upon events occurring prior to the execution of the Agreement. *See Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("We examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration.") Accordingly, plaintiff's claims fall within the scope of the Agreement and are subject to resolution by arbitration.

The Court must next determine whether Congress intended for plaintiff's federal statutory claims to be non-arbitrable. Count One asserts a claim for violations under the FLSA. The Sixth Circuit has held that FLSA claims may be arbitrated. *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("[T]he FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable. . .") *See also Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 313 (6th Cir. 2000). Accordingly, plaintiff's FLSA claims are subject to arbitration.

14

The final step is to determine whether to stay or dismiss the case. The FAA requires that a court, upon being satisfied that the issues involved in the suit are referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. However, where "there is 'nothing left for the district court to do but execute judgment,' dismissal [of the case] is appropriate." *Ewers v. Genuine Motor Cars, Inc.*, 2008 WL 755268, at *7 (N.D. Ohio 2008) (quoting *Arnold v. Arnold*, 920 F.2d 1269 (6th Cir. 1990)). The Court notes that defendants request a stay, rather than a dismissal, of the case. However, because all of the claims in this case are subject to the arbitration clause in the Agreement, this Court finds that dismissal of plaintiff's claims in deference to arbitration is appropriate.

Defendants also seek costs and attorneys' fees incurred in bringing this Motion to Compel Arbitration. This request is denied. The Court does not agree with defendants' contention that plaintiff acted in bad faith or without justification in initiating this action.

**CONCLUSION**

For all the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART defendants' Motion to Compel Arbitration, to Stay Proceedings, and for Attorneys' Fees (Doc. 6). The Complaint is DISMISSED in favor of arbitration.

IT IS SO ORDERED.

        /s/ Patricia A. Gaughan
        PATRICIA A. GAUGHAN
        United States District Judge
        Chief Judge

Dated: 6/23/21